UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 13-_____

UNITED STATES OF AMERICA                                                    PLAINTIFF

vs.

## COMPLAINT

ASSOCIATES IN EYE CARE P.S.C.,
and DR. PHILIP ROBINSON                                                     DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Plaintiff, the United States of America, by and through its undersigned counsel, states as follows:

## INTRODUCTION

1.      This is an action brought by the United States of America ("United States" or "Government"), to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), and to recover damages under the common law theories of payment by mistake and unjust enrichment.

2.      From January 1, 2007 through January 31, 2012 (the "relevant period"), Dr. Philip Robinson ("Robinson") provided, or claimed to provide, eye examinations and other optometric services to Medicare and Kentucky Medicaid beneficiaries residing in nursing homes in the Eastern District of Kentucky.  Robinson's employer, Associates in Eye Care, P.S.C. ("AEC"), submitted claims for payment to Medicare and Kentucky Medicaid for Robinson's actual or

alleged optometric services.  AEC received reimbursement from Medicare and Kentucky Medicaid as a result of those claims, and shared that money with Robinson.

3.      Irrespective of condition or diagnosis, Robinson provided eye examinations to most of his nursing home patients on a monthly basis, a frequency that was unreasonable and unnecessary given the patients' medical conditions.  Robinson also claimed to provide eye examinations to an extremely high volume of nursing home patients per day, routinely treating more than fifty such patients per day, and on at least eleven different occasions treating 100 or more Medicare and Kentucky Medicaid patients in a single day.  To the extent they were actually performed, these eye examinations were so cursory that they failed to provide the level of service necessary to justify Robinson and AEC's claims to Medicare and Kentucky Medicaid.

4.      The United States' claims against Defendants under the FCA are based upon false or fraudulent claims for payment that Robinson and AEC knowingly presented, or caused to be presented, to Medicare and Kentucky Medicaid.  These claims were false or fraudulent in that they requested payment for optometric services that were not medically reasonable or necessary, and/or claimed reimbursement for a level or type of optometric service that was not actually provided.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 because this action is brought by the Government as plaintiff pursuant to the FCA.

6.      This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants reside and transact business within the Eastern District of Kentucky.

7.      Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c).

## PARTIES

8.      The Plaintiff in this action is the United States of America, suing on its own behalf and on behalf of the United States Department of Health and Human Services ("HHS") and HHS' component agency, the Centers for Medicare and Medicaid Services ("CMS").

9.       Defendant Associates in Eye Care P.S.C. is a Kentucky professional services corporation with its principal place of business at P.O. Box 100, Whitley City, Kentucky, 42653, in the county of McCreary.  AEC provides optometric services at nursing facilities in southeastern Kentucky and at clinics in Albany, Somerset, Whitley City, and Williamsburg, Kentucky.

10.      Defendant Dr. Philip Robinson is a citizen of the United States and a resident of Pulaski County in the Commonwealth of Kentucky.  Robinson is a Doctor of Optometry.  At all relevant times, Robinson has owned between 8% and 10% of the stock of AEC.

## BACKGROUND

### A.      <u>The False Claims Act</u>

11.      The FCA prohibits knowingly presenting, or causing to be presented, to the federal government a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009).[1]

---

[1]  Congress amended the FCA as a part of the Fraud Enforcement Recovery Act of 2009 ("FERA") on May 20, 2009, making certain amendments retroactive, including 31 U.S.C. § 3729(a)(1)(B).  It amended the FCA again as part of the Patient Protection and Affordable Care Act on March 23, 2010.

12.     The term "knowingly" under the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA.  *Id.*

13.     Violations of the FCA subject the defendant to civil penalties of not less than $5,500 and not more than $11,000 per false claim, as adjusted for inflation, plus three times the amount of damages that the Government sustains as a result of the defendant's actions.  31 U.S.C. § 3729(a).

**B.     The Medicare and Medicaid Programs**

14.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for the costs of certain healthcare services.  Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease.  *See* 42 U.S.C. §§ 426, 426A. HHS, through CMS, administers the Medicare program.

15.     Part B of the Medicare program authorizes payment of federal funds for medical and other health services provided by physicians, including services provided by optometrists. *See* Medicare Benefit Policy Manual, Chapter 15, § 30.4 (2012).

16.     Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury.  Eligible individuals who are age 65 or older, or disabled, may enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS.  42 U.S.C. §§ 1395j, 1395o, 1395r.

17.     Individuals or entities who are participating providers in Medicare, such as Defendants, may seek reimbursement from this program for services rendered to patients who

are program beneficiaries, provided that the services are rendered in compliance with the laws, rules, regulations, policies and procedures governing reimbursement.

18.     Medicare Part B does not pay for medical services, including optometric services, that are not reasonable and necessary for the diagnosis or treatment of illness or injury.  42 U.S.C. § 1395y(a)(1)(A); Medicare Benefit Policy Manual, Chapter 15, § 30.4 (2012).  Medicare Part B also does not pay for routine examinations performed without relationship to treatment or diagnosis for a specific illness, symptom, complaint, or injury.  Medicare Benefit Policy Manual, Chapter 16, § 90 (2010).

19.     HHS, through CMS, also administers the Medicaid program, created in 1965 under Title XIX the Social Security Act, 42 U.S.C. § 1396, *et seq.*, to provide federally-funded health insurance to indigent persons whose incomes are insufficient to meet the costs of necessary health care.  In Kentucky, the Medicaid program has been established pursuant to KRS Chapter 205 and administrative regulations set forth in 907 KAR Chapter 1.  The Kentucky Cabinet for Health and Family Services, Department of Medicaid Services, administers the Medicaid program in Kentucky ("Kentucky Medicaid").

20.     Funding for Medicaid is shared between the federal government and those states participating in the Medicaid program.  Approximately 70% of each dollar spent by Kentucky Medicaid is contributed by the federal government pursuant to Title XIX of the Social Security Act.

21.     Individuals or entities who are participating providers in Kentucky Medicaid, such as Defendants, may seek reimbursement from this program for services rendered to patients who are program beneficiaries, provided that the services are rendered in compliance with the laws, rules, regulations, policies and procedures governing reimbursement.

22.     Throughout the relevant period, AEC and Robinson were enrolled providers in the Medicare and Kentucky Medicaid programs.  As enrolled providers, Defendants were permitted to submit claims to Medicare and Kentucky Medicaid for payment.

23.     Pursuant to certain employment agreements, Robinson assigned to AEC his right to bill Medicare and Kentucky Medicaid for the optometry services he performed.  Accordingly, throughout the relevant period, all claims to Medicare or Kentucky Medicaid for services performed, or allegedly performed, by Robinson were submitted by AEC, and AEC received all reimbursements paid as a result of those claims.

24.     Throughout the relevant period, AEC submitted claims to Medicare through a Medicare Administrative Carrier ("MAC") which contracted with CMS to process and pay claims for Medicare Part B services provided in Kentucky.  The MAC with responsibility for processing and paying AEC's claims is CGS Administrators, LLC.

25.     Throughout the relevant time period, AEC submitted claims to Kentucky Medicaid through the Department of Medicaid Services or its contractors.

26.     AEC submitted claims to Medicare and Kentucky Medicaid using a standardized claim form known as the CMS-1500 form.  The treating physician must sign and date the form.  By doing so, the physician certifies to the following statements that are printed on the back of each claim form:

    a.     For Medicare claims, "I certify that the services shown on this form were medically indicated and necessary for the health of the patient . . . ."

    b.     For Medicaid claims, "I certify that the services listed above were medically indicated and necessary to the health of the patient . . . ."

c.      For Medicaid claims, "This is to certify that the foregoing information is true, accurate, and complete.  I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claim, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws."

27.      As an alternative to use of the paper CMS-1500 claim forms, AEC submitted claims to Medicare electronically after submitting an Electronic Data Interchange ("EDI") Enrollment Form to the MAC.  By signing the EDI Enrollment Form, AEC agreed that "it will submit claims that are accurate, complete, and truthful;" "that services were performed as billed;" and that "all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program . . . ."

28.      As an alternative to use of the paper CMS-1500 claim forms, AEC submitted claims to Medicaid electronically after signing an addendum to its provider agreement called a MAP-380 form.  AEC acknowledged that its signature on the MAP-380 form "constitutes compliance with the following certification required of each individual claim transmitted by electronic media":

> This is to certify that the transmitted information is true, accurate, and complete . . . .  I understand that payment and satisfaction of these claims will be from Federal and State funds and that any false claims, statements, or documents or concealment of a material fact, may b[e] prosecuted under applicable Federal and State Law.

**C.      Coding Criteria**

29.      CMS assigns billing codes to medical services to be used by medical providers when billing Medicare Part B and Kentucky Medicaid.  These codes are contained in the CMS Common Procedure Coding System, and are called HCPCS codes.  Each HCPCS code is

assigned an allowable charge on a state-by-state basis.  The allowable charges are published in a fee schedule.

30.     In order to receive reimbursement from Medicare or Kentucky Medicaid, medical providers, including Defendants, must identify the service they provided and for which they seek reimbursement by stating the applicable HCPCS code on each claim for payment.

31.     During the relevant time period, more than 90% of the claims for reimbursement for Robinson's services in a nursing home used one of four HCPCS codes: 92012, 92014, 99308, and 99309.

32.     Code 92012 is used to describe an intermediate-level eye examination or evaluation, performed by an optometrist or ophthalmologist, which typically includes the initiation or continuation of a diagnostic and treatment program.  In order to bill Medicare or Medicaid using this code, the patient must have either a new medical condition or an existing condition that is complicated by some new diagnostic or management problem.

33.     Code 92014 is used to describe a comprehensive-level eye examination or evaluation, performed by an optometrist or ophthalmologist, which always includes the initiation or continuation of a diagnostic and treatment program.  The initiation or continuation of a diagnostic and treatment program can include prescribing medication or arranging for special diagnostic or consultative services.

34.     Code 99308 is used to describe the evaluation and management of a patient in a nursing home that involves at least two of the following three components: an expanded problem-focused eye examination, the taking of an expanded problem-focused history, and medical decision making of a low complexity.  According to the American Medical Association, code 99308 procedures typically take about 15 minutes to perform.

35.     Code 99309 is used to describe the evaluation and management of a patient in a nursing home that involves at least two of the following three components: a detailed eye examination, the taking of a detailed interval history, and medical decision making of a moderate complexity.  According to the American Medical Association, code 99309 procedures typically take about 25 minutes to perform.

36.     Throughout the relevant period, Robinson was an extreme outlier in his utilization of these four HCPCS codes compared to his state and national peers.  For example, during calendar year 2010, Robinson caused more claims to be submitted to Medicare for each of these four levels or types of eye examinations than any other optometrist in the Commonwealth of Kentucky.  From July 1, 2008 to December 31, 2008, Robinson caused more claims to be submitted to Medicare for 99308 services than any other optometrist in the United States of America.

## THE FRAUDULENT AND FALSE BILLING

37.     Throughout the relevant period, AEC contracted with certain nursing homes to provide optometric services to residents of those facilities.  With limited exception, Robinson was the AEC optometrist that provided such services.

38.     Beginning in 2007, Robinson greatly increased the volume and frequency of eye examinations he provided to nursing home residents.

39.     For example, in 2006, Robinson, through AEC, billed Medicare for 152 services with code 99309 and seven services with code 99308, resulting in reimbursements of $7,210.75.  Total Medicare reimbursements for Robinson's services in 2006 were $9,574.45.

40.     In 2007, Robinson, through AEC, billed Medicare for 512 services with code 99309 and 1,303 services with code 99308, resulting in reimbursements of $70,624.46.  Total

Medicare reimbursements for Robinson's services in 2007 were $245,934.18; by 2011, they exceeded $400,000.

41.     Despite being cautioned by consultants retained by AEC that these services must be medically necessary in order to bill Medicare for them, his practice of high-volume, high-frequency eye examinations for nursing home residents continued until shortly after he was interviewed by law enforcement agents about that very conduct in January 2012.

42.     With AEC's knowledge and consent, Robinson established a pattern of visiting each nursing home every four to six weeks, and examining all or nearly all of his patients within those homes each time he visited.

43.     By way of representative example, between January 17, 2007 and December 28, 2011, Patient No. 1, a resident of Britthaven of Somerset nursing home in Somerset, Kentucky, was examined by Robinson sixty-one times, approximately once per month for five years. Patient No. 1's primary diagnoses were typically redness of the eye or other external issues. With rare exception, the only plan of treatment indicated in AEC's medical records for the sixty-one examinations Robinson provided to Patient No. 1 is "monitor[ing]."

44.     AEC's medical records for these examinations do not support the medical necessity of the service billed to Medicare, and instead reflect redundant "cookie-cutter" care. From December 30, 2008 until October 20, 2010, Robinson examined Patient No. 1 twenty-three times; for twenty-two of those exams, Patient No. 1's chief complaint was documented only as "f/u (follow-up): headache."  Other than prescribing an antibiotic in September 2009, AEC's medical records for these twenty-three follow-up exams for Patient No. 1's headache described the plan of treatment as "monitor."

45.     AEC's medical records for all sixty-one service dates between January 17, 2007 and December 28, 2011 reflect Robinson's documentation of "no change" to Patient No. 1's medical history since May 4, 2005.

46.     AEC submitted the following forty-eight claims for payment to Medicare for services Robinson rendered to Patient No. 1:

| Service Date | Reimbursement Amount | HCPCS Code |
|---|---|---|
| 02/14/2007 | $56.18 | 99309 |
| 03/12/2007 | $56.18 | 99309 |
| 04/11/2007 | $56.18 | 99309 |
| 05/08/2007 | $39.99 | 99308 |
| 06/12/2007 | $44.90 | 92012 |
| 08/13/2007 | $39.99 | 99308 |
| 11/12/2007 | $44.90 | 92012 |
| 12/17/2007 | $39.99 | 99308 |
| 02/27/2008 | $51.51 | 92012 |
| 03/26/2008 | $75.07 | 92014 |
| 04/30/2008 | $44.01 | 99308 |
| 05/28/2008 | $51.51 | 92012 |
| 06/30/2008 | $75.07 | 92014 |
| 08/26/2008 | $51.51 | 92012 |
| 09/24/2008 | $51.51 | 92012 |
| 10/29/2008 | $75.07 | 92014 |
| 11/26/2008 | $51.51 | 92012 |
| 12/30/2008 | $51.51 | 92012 |
| 02/26/2009 | $14.46 | 99308 |
| 03/23/2009 | $52.23 | 92012 |
| 04/16/2009 | $52.23 | 92012 |
| 05/18/2009 | $76.52 | 92014 |
| 06/22/2009 | $52.23 | 92012 |
| 08/31/2009 | $76.52 | 92014 |
| 10/19/2009 | $52.23 | 92012 |
| 11/16/2009 | $52.23 | 92012 |
| 11/19/2009 | $52.23 | 92012 |
| 12/22/2009 | $76.52 | 92014 |

| 01/19/2010 | $2.02 | 92012 |
|---|---|---|
| 02/09/2010 | $45.22 | 92012 |
| 03/09/2010 | $81.60 | 92014 |
| 04/13/2010 | $56.00 | 92012 |
| 06/08/2010 | $81.60 | 92014 |
| 07/22/2010 | $58.00 | 92012 |
| 08/25/2010 | $58.00 | 92012 |
| 09/22/2010 | $49.72 | 99308 |
| 10/20/2010 | $58.00 | 92012 |
| 12/08/2010 | $84.80 | 92014 |
| 02/08/2011 | $84.71 | 92014 |
| 03/08/2011 | $60.79 | 92012 |
| 04/14/2011 | $60.79 | 92012 |
| 05/12/2011 | $88.38 | 92014 |
| 06/15/2011 | $60.79 | 92012 |
| 08/16/2011 | $60.79 | 92012 |
| 08/25/2011 | $88.38 | 92014 |
| 09/26/2011 | $60.79 | 92012 |
| 10/31/2011 | $50.09 | 99308 |
| 12/28/2011 | $88.38 | 92014 |

47.     As a result of these claims, Medicare paid AEC $2,930.45.

48.     The services identified in paragraph 46 were not medically reasonable or necessary, and/or consisted of routine monitoring or screening examinations not covered by Medicare, and the subsequent claims for payment identified in paragraph 46 were false or fraudulent within the meaning of the FCA.

49.     Robinson followed the same practice of monthly eye examinations, most of them unreasonable and unnecessary, for hundreds of other Medicare and Kentucky Medicaid beneficiaries not identified within this Complaint.  AEC submitted claims for payment to Medicare and Kentucky Medicaid for those unreasonable and unnecessary eye examinations, and received reimbursements from Medicare and Kentucky Medicaid as a result.

50.     Robinson knew or should have known, within the meaning of the FCA, that these optometric services were not medically reasonable or necessary, and that related claims for payment misrepresented the necessity of the service.

51.     Likewise, AEC knew or should have known, within the meaning of the FCA, that these optometric services were not medically reasonable or necessary, and that related claims for payment misrepresented the necessity of the service.

52.     Throughout the relevant period, Robinson also examined, or purported to examine, an extremely high number of nursing home patients per day.

53.     For example, on May 28, 2008, Robinson purported to provide services to 117 different Medicare beneficiaries and seven different Medicaid beneficiaries, for a total of 124 unique patients.  Similarly, on April 16, 2009, Robinson purported to provide services to 108 different Medicare beneficiaries and seven different Medicaid beneficiaries, for a total of 115 unique patients.

54.     There are at least eleven dates during the relevant time period on which Robinson purported to provide services to 100 or more unique nursing home patients.

55.     There are at least 271 other dates during the relevant time period on which Robinson purported to provide services to fifty or more unique nursing home patients.

56.     By contrast, and upon information and belief, an optometrist providing services under circumstances similar to Robinson's could be expected to treat approximately thirty nursing home patients in an eight-hour day.

57.     Upon information and belief, Robinson was not inside the nursing homes for more than eight hours on any one of the 271 dates on which he saw fifty or more unique patients.

58.     In light of these patient volumes, it is not possible for Robinson to have provided the level or type of medical service he claims to have provided on the claims for payment AEC submitted to Medicare and Medicaid.

59.     By way of representative example, on March 22, 2007, Robinson purported to treat at least fifty-two patients, of whom forty-nine received an eye examination billed under the 99309 code.  Nationally-accepted guidelines indicate that a 99309 service is usually warranted when the patient has developed a significant complication or a significant new problem, and that the typical time necessary to provide such a service is about twenty-five minutes.

60.     Had Robinson spent twenty-five minutes with each of the forty-nine nursing home patients alleged to have received that examination, he would have been in the nursing homes for more than twenty hours.

61.     Upon information and belief, Robinson was not in the nursing homes for more than eight hours on March 22, 2007.

62.     Robinson did not treat these forty-nine patients on March 22, 2007 with the level or type of service he and AEC claimed reimbursement for on their claims to Medicare and Kentucky Medicaid.

63.     AEC submitted the following claims for payment to Medicare for services Robinson claimed to have provided on March 22, 2007:

| Beneficiary Initials | Service Date | Reimbursement Amount | HCPCS Code |
|---|---|---|---|
| AT | 03/22/2007 | $56.18 | 99309 |
| RG | 03/22/2007 | $56.18 | 99309 |
| RB | 03/22/2007 | $56.18 | 99309 |
| JR | 03/22/2007 | $56.18 | 99309 |
| EC | 03/22/2007 | $56.18 | 99309 |
| OJ | 03/22/2007 | $56.18 | 99309 |

| LA | 03/22/2007 | $56.18 | 99309 |
|----|-----------|--------|-------|
| GB | 03/22/2007 | $56.18 | 99309 |
| SW | 03/22/2007 | $56.18 | 99309 |
| GB | 03/22/2007 | $56.18 | 99309 |
| GH | 03/22/2007 | $56.18 | 99309 |
| LO | 03/22/2007 | $56.18 | 99309 |
| DF | 03/22/2007 | $56.18 | 99309 |
| MD | 03/22/2007 | $56.18 | 99309 |
| AF | 03/22/2007 | $56.18 | 99309 |
| WH | 03/22/2007 | $56.18 | 99309 |
| OA | 03/22/2007 | $56.18 | 99309 |
| SB | 03/22/2007 | $56.18 | 99309 |
| VB | 03/22/2007 | $56.18 | 99309 |
| MP | 03/22/2007 | $56.18 | 99309 |
| DS | 03/22/2007 | $49.38 | 92014 |
| AL | 03/22/2007 | $56.18 | 99309 |
| OE | 03/22/2007 | $47.56 | 99309 |
| SB | 03/22/2007 | $66.82 | 92014 |
| JS | 03/22/2007 | $56.18 | 99309 |
| TB | 03/22/2007 | $56.18 | 99309 |
| EM | 03/22/2007 | $55.87 | 99309 |
| GG | 03/22/2007 | $56.18 | 99309 |
| FC | 03/22/2007 | $56.18 | 99309 |
| EW | 03/22/2007 | $52.25 | 99309 |
| CA | 03/22/2007 | $56.18 | 99309 |
| EA | 03/22/2007 | $56.18 | 99309 |
| ER | 03/22/2007 | $56.18 | 99309 |
| LR | 03/22/2007 | $64.10 | 92014 |
| GF | 03/22/2007 | $56.18 | 99309 |
| AJ | 03/22/2007 | $56.18 | 99309 |
| LW | 03/22/2007 | $56.18 | 99309 |
| HM | 03/22/2007 | $56.18 | 99309 |
| DM | 03/22/2007 | $56.18 | 99309 |
| WP | 03/22/2007 | $46.82 | 99309 |
| DL | 03/22/2007 | $56.18 | 99309 |
| DG | 03/22/2007 | $56.18 | 99309 |
| LG | 03/22/2007 | $56.18 | 99309 |
| RR | 03/22/2007 | $56.18 | 99309 |

| LB | 03/22/2007 | $56.18 | 99309 |
|----|------------|--------|-------|
| ED | 03/22/2007 | $56.18 | 99309 |
| AK | 03/22/2007 | $56.18 | 99309 |
| WC | 03/22/2007 | $56.18 | 99309 |
| CH | 03/22/2007 | $56.18 | 99309 |
| EC | 03/22/2007 | $56.18 | 99309 |
| IR | 03/22/2007 | $56.18 | 99309 |
| OG | 03/22/2007 | $56.18 | 99309 |

64.     As a result of these claims, Medicare paid AEC $2,910.90.

65.     The claims identified in paragraph 63 above were false or fraudulent under the FCA because Robinson did not provide, and could not have provided, the level or type of medical service he claims to have provided.  In the alternative, the claims identified in paragraph 63 above were false or fraudulent under the FCA because the services rendered were so cursory, superficial, and so grossly deficient as to be worthless.

66.     By way of further representative example, on May 28, 2008, Robinson purported to treat at least 124 patients.

67.     Of these 124 patients, Robinson purported to perform a 99308 service on forty-five of them.  These examinations would have required approximately 675 minutes, or more than eleven hours, of direct physician-patient interaction using accepted guidelines.

68.     In addition to these forty-five 99308 services, Robinson purported to provide another sixty patients with an intermediate eye examination under HCPCS code 92012. Assuming these services took a mere five minutes each on average to perform, that work would have required another five hours of direct physician-patient interaction.

69.     Another sixteen patients treated by Robinson on May 28, 2008 received a comprehensive eye examination billed under HCPCS code 92014.  Assuming that these services

took ten minutes each on average to perform, that work would have required almost another three hours of direct physician-patient interaction.

70.     Based on his claims to Medicare and Medicaid, Robinson would have spent nineteen hours of direct physician-patient interaction time on May 28, 2008.  That time estimate does not include time spent discussing patients with nursing home staff, walking from room to room within the nursing home, driving from one nursing home to another, charting the residents' care, or taking breaks to eat, sleep, or use the restroom.

71.     Upon information and belief, Robinson was not in the nursing homes for more than eight hours on May 28, 2008.

72.     Robinson did not treat these 124 patients on May 28, 2008 with the level or type of service he and AEC claimed reimbursement for on their claims to Medicare and Kentucky Medicaid.

73.     AEC submitted the following claims for payment to Medicare for services Robinson claimed to have provided on May 28, 2008:

| Beneficiary Initials | Service Date | Paid Amount | HCPCS Code |
|---|---|---|---|
| MT | 05/28/2008 | $44.01 | 99308 |
| DH | 05/28/2008 | $44.01 | 99308 |
| SG | 05/28/2008 | $44.01 | 99308 |
| EB | 05/28/2008 | $51.51 | 92012 |
| MS | 05/28/2008 | $51.51 | 92012 |
| DB | 05/28/2008 | $44.01 | 99308 |
| CV | 05/28/2008 | $44.01 | 99308 |
| DA | 05/28/2008 | $51.51 | 92012 |
| ED | 05/28/2008 | $51.51 | 92012 |
| MK | 05/28/2008 | $51.51 | 92012 |
| MH | 05/28/2008 | $51.51 | 92012 |
| MW | 05/28/2008 | $51.51 | 92012 |
| EW | 05/28/2008 | $51.51 | 92012 |

| | | | |
|---|---|---|---|
| PH | 05/28/2008 | $44.01 | 99308 |
| WK | 05/28/2008 | $51.51 | 92012 |
| VB | 05/28/2008 | $51.51 | 92012 |
| AB | 05/28/2008 | $75.07 | 92014 |
| ED | 05/28/2008 | $75.07 | 92014 |
| WK | 05/28/2008 | $75.07 | 92014 |
| OD | 05/28/2008 | $44.01 | 99308 |
| LB | 05/28/2008 | $44.01 | 99308 |
| GT | 05/28/2008 | $51.51 | 92012 |
| AA | 05/28/2008 | $51.51 | 92012 |
| OG | 05/28/2008 | $75.07 | 92014 |
| MH | 05/28/2008 | $44.01 | 99308 |
| DM | 05/28/2008 | $51.51 | 92012 |
| EV | 05/28/2008 | $51.51 | 92012 |
| VN | 05/28/2008 | $75.07 | 92014 |
| SP | 05/28/2008 | $44.01 | 99308 |
| DJ | 05/28/2008 | $44.01 | 99308 |
| MP | 05/28/2008 | $44.01 | 99308 |
| IW | 05/28/2008 | $44.01 | 99308 |
| OT | 05/28/2008 | $51.51 | 92012 |
| CT | 05/28/2008 | $51.51 | 92012 |
| OH | 05/28/2008 | $51.51 | 92012 |
| ED | 05/28/2008 | $44.01 | 99308 |
| EW | 05/28/2008 | $51.51 | 92012 |
| VA | 05/28/2008 | $44.01 | 99308 |
| AW | 05/28/2008 | $44.01 | 99308 |
| LC | 05/28/2008 | $44.01 | 99308 |
| MC | 05/28/2008 | $51.51 | 92012 |
| BS | 05/28/2008 | $51.51 | 92012 |
| EF | 05/28/2008 | $51.51 | 92012 |
| ME | 05/28/2008 | $75.07 | 92014 |
| LC | 05/28/2008 | $51.51 | 92012 |
| IC | 05/28/2008 | $51.51 | 92012 |
| CL | 05/28/2008 | $44.01 | 99308 |
| ML | 05/28/2008 | $44.01 | 99308 |
| BW | 05/28/2008 | $51.51 | 92012 |
| IB | 05/28/2008 | $51.51 | 92012 |

| EG | 05/28/2008 | $51.51 | 92012 |
|----|------------|--------|-------|
| LR | 05/28/2008 | $44.01 | 99308 |
| HW | 05/28/2008 | $51.51 | 92012 |
| VP | 05/28/2008 | $51.51 | 92012 |
| RH | 05/28/2008 | $44.01 | 99308 |
| LF | 05/28/2008 | $75.07 | 92014 |
| BT | 05/28/2008 | $44.01 | 99308 |
| EA | 05/28/2008 | $51.51 | 92012 |
| NS | 05/28/2008 | $44.01 | 99308 |
| MW | 05/28/2008 | $72.25 | 92004 |
| GG | 05/28/2008 | $51.51 | 92012 |
| DS | 05/28/2008 | $44.01 | 99308 |
| ET | 05/28/2008 | $44.01 | 99308 |
| RG | 05/28/2008 | $51.51 | 92012 |
| CG | 05/28/2008 | $51.51 | 92012 |
| HC | 05/28/2008 | $51.51 | 92012 |
| UC | 05/28/2008 | $44.01 | 99308 |
| JL | 05/28/2008 | $44.01 | 99308 |
| AC | 05/28/2008 | $51.51 | 92012 |
| EA | 05/28/2008 | $51.51 | 92012 |
| HB | 05/28/2008 | $51.51 | 92012 |
| GD | 05/28/2008 | $51.51 | 92012 |
| DW | 05/28/2008 | $44.01 | 99308 |
| DG | 05/28/2008 | $44.01 | 99308 |
| CB | 05/28/2008 | $51.51 | 92012 |
| LG | 05/28/2008 | $44.01 | 99308 |
| RC | 05/28/2008 | $51.51 | 92012 |
| GT | 05/28/2008 | $51.51 | 92012 |
| LP | 05/28/2008 | $51.51 | 92012 |
| EC | 05/28/2008 | $44.01 | 99308 |
| RP | 05/28/2008 | $51.51 | 92012 |
| MH | 05/28/2008 | $75.07 | 92014 |
| EH | 05/28/2008 | $75.07 | 92014 |
| IB | 05/28/2008 | $51.51 | 92012 |
| OT | 05/28/2008 | $51.51 | 92012 |
| RC | 05/28/2008 | $51.51 | 92012 |
| TL | 05/28/2008 | $51.51 | 92012 |

| GR | 05/28/2008 | $51.51 | 92012 |
|----|------------|--------|-------|
| LA | 05/28/2008 | $44.01 | 99308 |
| HF | 05/28/2008 | $75.07 | 92014 |
| BP | 05/28/2008 | $44.01 | 99308 |
| ID | 05/28/2008 | $75.07 | 92014 |
| ET | 05/28/2008 | $51.51 | 92012 |
| CS | 05/28/2008 | $51.51 | 92012 |
| MP | 05/28/2008 | $51.51 | 92012 |
| JS | 05/28/2008 | $51.51 | 92012 |
| JG | 05/28/2008 | $51.51 | 92012 |
| LK | 05/28/2008 | $51.51 | 92012 |
| HH | 05/28/2008 | $44.01 | 99308 |
| AC | 05/28/2008 | $44.01 | 99308 |
| ED | 05/28/2008 | $51.51 | 92012 |
| BL | 05/28/2008 | $75.07 | 92014 |
| GV | 05/28/2008 | $51.51 | 92012 |
| EG | 05/28/2008 | $51.51 | 92012 |
| LS | 05/28/2008 | $51.51 | 92012 |
| BC | 05/28/2008 | $44.01 | 99308 |
| NH | 05/28/2008 | $44.01 | 99308 |
| ET | 05/28/2008 | $44.01 | 99308 |
| HW | 05/28/2008 | $51.51 | 92012 |
| DF | 05/28/2008 | $44.01 | 99308 |
| SD | 05/28/2008 | $75.07 | 92014 |
| LP | 05/28/2008 | $75.07 | 92014 |
| BC | 05/28/2008 | $51.51 | 92012 |
| BG | 05/28/2008 | $51.51 | 92012 |
| AB | 05/28/2008 | $75.07 | 92014 |
| LC | 05/28/2008 | $44.01 | 99308 |
| MG | 05/28/2008 | $44.01 | 99308 |

74.     As a result of these claims, Medicare paid AEC $6,093.31.

75.     AEC submitted the following relevant claims for payment to Kentucky Medicaid for services Robinson claimed to have provided on May 28, 2008:

| Beneficiary Initials | Service Date | Paid Amount | HCPCS Code |
|---|---|---|---|
| ES | 05/28/2008 | $42.19 | 99308 |
| JR | 05/28/2008 | $42.19 | 99308 |
| CC | 05/28/2008 | $42.19 | 99308 |
| TR | 05/28/2008 | $42.19 | 99308 |
| AT | 05/28/2008 | $59.51 | 99309 |

76.     As a result of these claims, Kentucky Medicaid paid AEC $228.27.

77.     The claims identified in paragraphs 73 and 75 above were false or fraudulent under the FCA because Robinson did not provide, and could not have provided, the level or type of medical service he claims to have provided.  In the alternative, the claims identified in paragraphs 73 and 75 above were false or fraudulent under the FCA because the services rendered were so cursory, superficial, and so grossly deficient as to be worthless.  The same is true of claims submitted by AEC to Medicare and Kentucky Medicaid for each of the other 270 service dates on which Robinson saw fifty or more unique Medicare and Kentucky Medicaid beneficiaries.

78.     Robinson personally signed off on each of the claims for payment submitted by AEC for his services, and knew or should have known, within the meaning of the FCA, that they falsely exaggerated the level or type of service he actually provided.

79.     Likewise, AEC knew or should have known, within the meaning of the FCA, that the claims for payment it submitted for Robinson's services falsely exaggerated the level or type of service he actually provided.

80.     As a result of these false claims for optometry services on dates where Robinson purported to treat fifty or more unique nursing home patients, Medicare and Kentucky Medicaid paid AEC at least $987,475.78 during the relevant period.

**COUNT I:   FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1) (January 1, 2004 to May 19, 2009) and 31 U.S.C. § 3729(a)(1)(A) (May 20, 2009 to January 31, 2012)**

### All Defendants

81.     The United States restates and incorporates by reference paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82.     AEC knowingly presented, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for optometric services provided, or allegedly provided, by Robinson to Medicare and Kentucky Medicaid beneficiaries residing in nursing homes.  The claims were false or fraudulent because they sought payment for medical services that were not reasonable or necessary, and/or because they sought payment for a level or type of service that was not actually provided.

83.     Robinson knowingly caused to be presented, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for optometric services provided, or allegedly provided, by Robinson to Medicare and Kentucky Medicaid beneficiaries residing in nursing homes.  The claims were false or fraudulent because they sought payment for medical services that were not reasonable or necessary, and/or because they sought payment for a level or type of service that was not actually provided.

84.     By virtue of the false or fraudulent claims presented or caused to be presented by the Defendants, the United States suffered damages.

85.     Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

## COUNT II:     UNJUST ENRICHMENT

### All Defendants

86.     The United States restates and incorporates by reference paragraphs 1 through 80 of the Complaint as if fully set forth herein.

87.     Defendants received and retained the benefit of federal monies paid from Medicare and Kentucky Medicaid and intended to compensate Defendants for medically necessary and reasonable optometric services.

88.     The services for which Medicare and Kentucky Medicaid paid Defendants were not medically necessary and reasonable.

89.     Defendants received and retained the benefit of federal monies paid from Medicare and Kentucky Medicaid and intended to compensate Defendants for a certain level or type of optometric service that Defendants claimed to have provided.

90.     The level or type of service that Defendants actually provided had no value, or significantly less value than what Defendants represented on their claims to Medicare and Kentucky Medicaid.

91.     Defendants have been unjustly enriched with federal monies from Medicare and Kentucky Medicaid, in an amount to be determined at trial, which they should not in equity and good conscience be permitted to retain.

## COUNT III:  PAYMENT BY MISTAKE

## All Defendants

92.     The United States restates and incorporates by reference paragraphs 1 through 80 of the Complaint as if fully set forth herein.

93.     This is a claim for the recovery of monies paid by the United States to AEC as a result of mistaken understandings of fact.  Robinson received and retained the benefit of some of these monies.

94.     The false claims which Defendants submitted or caused to be submitted to the United States were paid by the United States based upon mistaken or erroneous understandings of material fact.

95.     The United States, acting in reasonable reliance on the truthfulness of the claims and the truthfulness of Defendants, paid AEC certain sums of money to which AEC was not entitled, some of which was passed on to Robinson.  Defendants are thus liable to account for and to pay such amounts, which are to be determined at trial, to the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, requests that judgment be entered in its favor and against Defendants, jointly and severally, as follows:

1.     On the First Count under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

2.     On the Second and Third Counts, for unjust enrichment and payment by mistake, for the amounts by which the Defendants were unjustly enriched or by which the Defendants

retained illegally obtained monies, plus interest, costs, and expenses, and all such further relief as may be just and proper in an amount to be determined.

3.     With respect to each Count, interest, attorney's fees and costs as allowed by law, and any and all further relief as the Court deems just and proper.

Pursuant to Federal Rule of Civil Procedure 38, the United States demands a trial by jury on all issues raised in its Complaint.


Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY


By:     /s/ Paul McCaffrey_____
        Paul McCaffrey
        Assistant United States Attorney
        260 W. Vine St., Suite 300
        Lexington, KY 40507
        Tel: (859) 233-2661
        Fax: (859) 233-2533
        Paul.McCaffrey@usdoj.gov


DATED:     May 13, 2013