UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| V. | ) | Civil No. 13-27-GFVT |
| ASSSOCIATES IN EYE CARE, P.S.C., | ) | |
| and | ) | **MEMORANDUM OPINION** |
| DR. PHILIP ROBINSON, | ) | **AND** |
| Defendants. | ) | **ORDER** |
| | ) | |

*** *** *** ***

This matter is before the Court upon the Joint Motion to Dismiss [R. 4] filed by

Defendants Dr. Philip Robinson and Associates in Eye Care ("AEC"), and the Motion to Dismiss

filed by Defendant AEC [R. 6] on the same day.  For the reasons set forth herein, both motions

are DENIED.

# I

The relevant facts and legal standards are the same for both motions.  The United States

has brought an action against both Dr. Philip Robinson, an optometrist, and against his employer,

Associates in Eye Care, P.S.C. ("AEC"), under the False Claims Act, 31 U.S.C. §§ 3729-33

("FCA"), and under common law theories of payment by mistake and unjust enrichment.  [R. 1,

¶¶ 1-2.]  The Complaint alleges that Dr. Robinson provided routine eye examinations to nursing

home residents that were unnecessary, and that on certain days he claimed to examine such a

high number of patients that either he could not possibly have provided such services under the circumstances, and/or such services were so cursory that they were worthless.  [R. 1, ¶¶ 2-3; R. 10 at 1.]  The Complaint also alleges that AEC, who employed Dr. Robinson, sought and received all reimbursement from Medicare and Medicaid for the services at issue between January 1, 2007 and January 31, 2012.  [R. 1, ¶2; R. 10 at 1; R. 11 at 2.]  According to the Complaint, Dr. Robinson owned 8%-10% of AEC's stock, and Dr. Robinson assigned his right to bill Medicare and Medicaid for his services to AEC, who submitted all of Dr. Robinson's claims and then shared the reimbursement money with him.  [R. 1, ¶¶ 2, 23.]  During the time period in question, the United States claims Dr. Robinson "was an extreme outlier in his utilization" of certain billing codes, allegedly submitting more claims to Medicare for certain types of eye exams during certain time periods than any other optometrist in Kentucky, and in the country.  [R. 1, ¶ 36.]

In particular, the Complaint alleges that the frequency with which Dr. Robinson began to see many of his nursing home patients, beginning in 2007, was "unreasonable and unnecessary" given their conditions.  [R. 1, ¶ 3.]  The Complaint further alleges that there were at least 271 days during the relevant time period in which Dr. Robinson claims to have seen fifty (50) or more nursing home residents, which means that he could not have spent more than a few minutes at most with each one, and/or which establishes that the billing codes he used did not accurately reflect the services provided.  [R. 10 at 1-2; R. 11 at 2-3.]  According to the United States, on eleven of those days in question, Dr. Robinson claimed to have treated over 100 patients in an eight-hour day, while using billing codes that described examinations that typically take at least fifteen minutes to perform.  [R. 1, ¶¶ 3, 31-36.]

In their Joint Motion to Dismiss, Dr. Robinson and AEC contend that the United States has not pled facts with sufficient particularity to satisfy the requirements of Federal Rules of Civil Procedure 12(b)(6) or 9(b). [R. 4-1 at 3, 5, 8.] Defendants argue that the government's allegations are not specific enough to provide proper notice, that the claims are based on speculation and devoid of factual support, and that the so-called representative examples of fraudulent claims detailed in the Complaint are not truly representative of the whole and therefore are insufficient for purposes of a FCA claim. [R. 4-1 at 1-16.] Additionally, Defendants contend that the Complaint fails to plead sufficient facts to establish the requisite intent element of the claim. [*Id*. at 16-21.] Finally, Defendants argue that the United States' claims of unjust enrichment and mistake should also be dismissed pursuant to the same particularity standard of Rule 9(b). [*Id*. at 21-23.]

In AEC's Motion to Dismiss, AEC separately argues that at least the claims against AEC should be dismissed because they lack sufficient detail concerning AEC's role in allegedly fraudulent activities, particularly because the Complaint fails to allege how AEC could have known there was anything wrong with Dr. Robinson's claims. [R. 6-1 at 1-5.] AEC also contends that it should not be held accountable under the FCA for Dr. Robinson's behavior. [*Id*.]

## II

### A

Under the False Claims Act ("FCA"), any person or entity "who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the United States government for a specified civil penalty, plus two

or three times the amount of damages which that person's fraudulent acts caused the government to sustain. 31 U.S.C. § 3729(a)(1)(A)-(B). For purposes of the FCA, the term "knowingly" means that the person or entity "has actual knowledge of the information," or acts "in deliberate ignorance" or "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). To act "knowingly" requires "no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B).

Accordingly, the Sixth Circuit, as well as other Circuits, have commonly held that the requisite elements of a FCA claim are as follows: "(1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken 'knowingly,' i.e., with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007); *see also United States v. Villaspring Health Care Center, Inc.*, 2011 WL 6337455, at *1 (E.D. Ky. Dec. 19, 2011) (quoting *Bledsoe*, 501 F.3d at 503).

**B**

In a motion to dismiss pursuant to Federal Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *Id.* (citation omitted). Such a motion should not be granted, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Moreover, the facts that are pled must rise to the level of plausibility, not just possibility — a complaint containing "facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)(internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## C

Although for most allegations, the *Twombly* standard of plausibility stated above is sufficient, Federal Rule 9(b) requires that when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, when a complaint alleges a violation of the FCA, the elements discussed above must be pled with particularity, except for intent, which can be pled generally. *United States v. Ford Motor Co.*, 532 F.3d 496, 505 (6th Cir. 2008). However, Rule 9(b) must also be read "in conjunction with" the so-called notice pleading requirement of Federal Rule 8, which requires only "a short and plain statement of the claim." *Bledsoe*, 501 F.3d at 503 (quoting Fed. R. Civ. P. 8); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (noting that Federal Rule 9(b) must be read "in harmony" with Rule 8) (citing *Michaels Bldg. Co. v.*

*Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)). When the two Rules are read together, "it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific notice" about the particulars of a fraud claim. *Bledsoe,* 501 F.3d at 503. The policy behind pleading standards concerns the need to "ensure fundamental fairness for defendants" by providing defendants with sufficient notice of the claims against them so that they can adequately prepare a response. *Ford Motor Co.*, 532 F.3d at 503; *see also Bledsoe*, 501 F.3d at 503; *Michaels Bldg. Co.*, 848 F.2d at 679. Rule 9 reflects the understanding that in cases involving fraud claims, more specific notice than usual is necessary to enable the defendant to respond to the allegations. *Ford Motor Co.*, 532 F.3d at 504; *Bledsoe,* 501 F.3d at 503.

In the context of the FCA, the Sixth Circuit has further interpreted Rule 9(b) as requiring the plaintiff to provide "sufficient details regarding the time, place and content of [Defendant's] alleged false statements, [the Defendant's] claim for payment from the federal government, and the manner in which the false statements induced the government to make a claimed payment to [Defendant]." *Ford Motor Co.*, 532 F.3d at 505 (citing *Bledsoe*, 501 F.3d at 509); *see also Sanderson*, 477 F.3d at 877; *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). In other words, to plead a FCA claim with sufficient particularity to survive a motion to dismiss, the plaintiff must provide more than a mere assertion that fraud has been committed and must instead specify, at a minimum, "the who, what, when, where, and how of the alleged fraud." *Sanderson*, 447 F.3d at 877 (internal quotations omitted); *see also Bledsoe*, 501 F.3d at 504.

Thus, when a complaint alleges a violation of the FCA, it is essential that the complaint also include an actual, specific false claim in order to meet the requirements of Rule 9(b).

*Bledsoe*, 501 F.3d at 504. However, the Sixth Circuit has also held that when a complaint alleges "a complex and far-reaching fraudulent scheme" that involves numerous transactions occurring over a long period of time, the plaintiff does not have to provide the specifics of every single instance of fraudulent conduct, but instead may present representative examples of "specific false claims submitted to the government pursuant to that scheme." *Bledsoe*, 501 F.3d at 510 (citations omitted); *see also Ford Motor Co.*, 532 F.3d at 506. Simply alleging a fraudulent scheme alone is not enough. *Sanderson*, 447 F.3d at 877 (internal quotations omitted); *Ford Motor Co.*, 532 F.3d at 506 (finding that alleging a fraudulent scheme was not enough to meet Rule 9(b)'s requirements because plaintiff had not provided a single example of a specific false claim made by defendant). To qualify as a truly representative example sufficient to support a more generalized allegation of a larger fraudulent scheme, the specific instance detailed in the complaint must be a representative sample including the time, place, and content of the act, and in particular it must be a "characteristic example[s]. . . illustrative of [the] class of all claims covered by the fraudulent scheme." *Ford Motor Co.*, 532 F.3d at 506 (quoting *Bledsoe*, 501 F.3d at 310-11).

### III

In their Joint Motion to Dismiss, AEC and Dr. Robinson argue that the Complaint fails to allege enough facts to meet the particularity requirements of Rule 9(b) discussed above. According to the Defendants, the government's Complaint lacks factual support, and its lack of specificity is insufficient to put Defendants on notice of exactly which behavior allegedly violated the FCA. In particular, Defendants argue that the government has not alleged any specific instances of fraud, and the examples purporting to be representative of an extensive

fraudulent scheme are not truly representative of the whole but are simply "anecdotal allegations" purposely "cherry-picked" from Dr. Robinson's high-volume days and not exemplary of his overall practice.

As explained above, a complaint alleging a FCA violation is sufficient for purposes of Rule 9(b) if it alleges "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendants' fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). Here, the United States has alleged that AEC and Dr. Robinson have engaged in fraudulent activity from January 1, 2007 through January 31, 2012. [R. 1, ¶2.] While that general time frame and description is sufficient for alleging an ongoing fraudulent scheme, *see Villaspring Health Care Center*, 2011 WL 6337455, at *4, the Sixth Circuit has also required that plaintiffs include allegations of a specific false claim to establish a FCA violation. *Chesbrough*, 655 F.3d at 471 (citing *Bledsoe*, 501 F.3d 493). In this case, the United States has included several representative examples of days in which Dr. Robinson billed for seeing over fifty (50) patients. For each of these examples, the Complaint contains specific allegations of the dates Dr. Robinson saw the patients, the initials of each patient seen, the billing codes used, and the specific amounts of money paid to AEC by Medicare or Medicaid. [*See* R. 1, ¶¶ 45-47, 59-64, 66-77.] The government in this case has clearly alleged the "who, what, when, and where" necessary to satisfy Rule 9(b). *Bledsoe*, 501 F.3d at 505.

In *Sanderson*, which the Defendants cite in support of their contention that the Complaint lacks specificity, the complaint at issue did not refer to any specific fraudulent cost reports or specific fraudulent claims filed with the government, nor did it provide details as to who filed such claims or even when they were filed. *Sanderson*, 447 F.3d at 875. The complaint also

failed to identify any applicable laws or regulations allegedly violated by the claims. *Id.* Accordingly, the court in *Sanderson* affirmed the district court's holding that such "bare contention[s]" were too "vague and cursory" to meet the standards of specificity required by Rule 9(b). *Id.* at 876, 878-79. Similarly, in *Yuhasz*, the complaint contained no details identifying the "specific parties, contracts, or fraudulent acts," and did not assert any specific false claims for government resources that could be identified. *Yuhasz*, 341 F.3d at 564. The case at hand is very different. Here, the Complaint contains several specific false claims and very precisely identifies the identity of the actors, the dates, the billing codes, the locations involved, and the amount of federal funds obtained. Therefore, the Court finds that the Complaint in this case is specific enough to give the Defendants adequate notice in order to prepare a response. *See Ford Motor Co*., 532 F.3d at 504. "While additional detail may be 'relevant to the inquiry of whether a [plaintiff] had pled the circumstances constituting fraud with particularity, it is not mandatory.'" *Id.* (quoting *Bledsoe*, 501 F.3d at 506).

## A

The Defendants place great emphasis on their argument that the representative examples detailed in the Complaint are not truly representative of the whole. The Court finds such protestations unavailing. The Complaint alleges an on-going fraudulent scheme that took place over a period of several years and involved hundreds of claims. In such a case, the plaintiff is not required to provide exhaustive detail on every one of those hundreds of allegedly false claims, or else the purpose of Rule 8 would be abrogated. *Bledsoe*, 501 F.3d at 510. Rather, as explained above, in such a situation when a large scheme is at issue, the plaintiff may instead allege specific, representative examples. *Id.* Here, the United States provides extensive detail

involving several examples of the alleged scheme.  First, the Complaint gives an example of one patient whom Dr. Robinson claimed to have examined sixty-one times during the relevant time period, which would equal approximately once per month.  [R. 1, ¶¶43-44.]  Although the records for that patient did not support the necessity of seeing him so many times, Dr. Robinson submitted forty-eight claims related to that patient to Medicare.  The Complaint lists every one of those claims – the date, the place, the amount billed, the code used, and the total amount that Medicare paid for those claims.  Such detail is specific enough for a representative example and is sufficient to put the Defendants on notice of the allegations which the example represents.

Additionally, the Complaint provides great detail about two other examples of days in which Dr. Robinson allegedly made false claims to Medicare/Medicaid.  The scheme which the Complaint describes involves 271 days on which Dr. Robinson claimed to have examined fifty or more nursing home patients.  On eleven of those days, he claimed to have examined 100 or more different patients.  One representative example was for March 22, 2007, on which Dr. Robinson claimed to have seen fifty-two patients, which is the lower end of the scale concerning the 271 days at issue.  The other example was for May 28, 2008, on which Dr. Robinson claimed to have seen 124 different patients, which is on the high end of the scale.  Thus, the United States has provided detailed examples at both ends of the spectrum.  For both of those examples, the Complaint includes an incredibly detailed chart of the patients' initials, the billing codes used, and the amount paid by Medicare or Medicaid.  [R. 1, ¶¶ 61-64, 66-76.]  In its response brief, the United States further contends that it does not claim that these examples are representative of all dates or claims within the entire relevant time period, but rather that these examples are "materially similar" to claims during that time concerning fifty or more patients.  This is more

detail than necessary to satisfy the requirements of Rule 9(b) concerning fraud cases. *See Bledsoe*, 501 F.3d at 510-11. Any additional facts showing that these examples are not representative would require factual inquiries more appropriate for later stages of litigation and outside the scope of what the Court must consider for purposes of a motion to dismiss.

**B**

With regard to intent, the Defendants' state of mind may be pled generally rather than with particularity under Rule 9(b). *Ford Motor Co.*, 532 F.3d at 505. Here, the United States alleges that AEC knew or should have known that something was wrong based on the clear mathematical impossibility that Dr. Robinson could have spent the time that he billed for with the number of patients he claimed to have examined. The Complaint explains that two of the four billing codes most often used by Dr. Robinson for the claims in question are used for procedures that typically require fifteen to twenty-five minutes to perform. [R. 1, ¶¶ 34-35.] The other two codes describe examinations which include initiation or continuation of a diagnostic and treatment program. [R. 1, ¶¶ 32-33.] On eleven of the days in the relevant time period, Dr. Robinson claimed to have treated over 100 patients, and on 271 days during the time in question he claimed to examine over fifty patients. Even if he saw fifty patients in eight hours, he could not have spent more than 6.25 minutes with each one, which is arguably insufficient to justify any of the billing codes he used. For days that Dr. Robinson claimed to have seen more than fifty patients, the plausibility of his having adequately performed the examinations he billed for becomes even less. On these facts, the United States has sufficiently alleged the requisite intent for a FCA claim to survive a motion to dismiss. *See Ford Motor Co.*, 532 F.3d at 505.

Moreover, the FCA specifically defines "knowingly" in three different ways, *see* 31 U.S.C. § 3729(b), and the United States has alleged that while Dr. Robinson had "actual knowledge" of the falsity of his own claims, AEC at least acted "in deliberate ignorance of the truth" or "in reckless disregard" to the truth, *see id*., because the fact that it would have been impossible for Dr. Robinson to spend more than a few minutes with each patient on the high-volume days in question should have alerted a reasonable person, and certainly a group of fellow optometrists, to the possibility that there was something wrong with his billing practices. Thus, based on the facts alleged, the Court finds that each element required for an FCA claim is set forth in the Complaint with sufficient specificity that the claims should not be dismissed under Rule 12(b)(6) or Rule 9(b).

## C

The Defendants next contend that the Complaint is insufficient because the government has alleged several competing, alternative theories which amount to mere speculation instead of valid claims. [R. 4-1 at 16.] According to Defendants, these various theories include allegations that Dr. Robinson's examinations were so cursory that they failed to meet the appropriate standard of care, that his services were worthless, and/or that his services were unreasonable or unnecessary. [*Id*. at 16-21.] The Defendants cite extensively to a case from the Second Circuit, *Mikes v. Straus*, 274 F.3d 687 (2nd Cir. 2001), in support of their contention that none of these theories on the part of the government are viable bases for FCA liability. The United States has argued in its response brief that rather than alleging alternative, competing theories, the government has alleged that AEC and Dr. Robinson submitted *all three* types of false claims – for unnecessary services, upcoded services, and for worthless services. [R. 10 at 5.]

As a threshold matter, where a complaint pleads certain theories in the alternative, Federal Rule 8(d)(2) specifically allows a plaintiff to set out two or more statements of a claim as an alternative. Fed. R. Civ. P. 8(d)(2). Moreover, these various theories are not "competing" with each other, as the Defendants claim, and all three of these theories have been found to be valid types of false claim theories that can fall within the FCA. *See, e.g., Chesbrough*, 655 F.3d at 458; *Villaspring*, 2011 WL 6337455, at \*5. In particular, a so-called "worthless services claim" alleges that an entity made a "knowing request of federal reimbursement for a procedure with no medical value" in violation of the FCA. *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 702 (2d Cir. 2001). It essentially alleges that a claim is false because "it seeks reimbursement for a service not provided." *Id.* at 703. To establish this claim, the plaintiff only needs to show that the patients lacked the quality of care required by a statutory standard. *Villaspring*, 2011 WL 6337455, at \*5. In *Villaspring*, while addressing a worthless services claim in the context of nursing home patients, the court decided that whether the defendant's actions actually fell within the "admittedly gray area" of providing an adequate quality of care was "necessarily a fact-intensive inquiry" which was "not a proper question for the Court to answer on a motion to dismiss." *Id.* (internal citations omitted).

Here, the complaint specifically alleges that certain claims were upcoded, such as those submitted on March 22, 2007, based on the assumption that Dr. Robinson did not have the time necessary to conduct the examination described by the billing code he used. That allegation differs from the allegations concerning Dr. Robinson's reports for May 28, 2008, which are alleged to be for worthless services, based on the assumption that he must have spent less than four minutes with each patient on that day, which would have resulted in very superficial, or

worthless, examinations. These allegations clearly meet the requisite pleading standards. At this stage in litigation, the government does not need to prove that all of the claims at issue were actually worthless, unreasonable, or unnecessary – the details of such arguments constitute factual disputes that the Court cannot and should not resolve at this stage in litigation. *See Villaspring*, 2011 WL 6337455, at *5. To survive a motion to dismiss, the government need only plead these claims with sufficient detail, and it has done so, as explained above.

**D**

Finally, the Defendants move to dismiss Counts III and IV which assert common law claims for unjust enrichment and payment by mistake. [R. 4-1 at 21-23.] The Defendants make an argument similar to that made by the defendants in *Villaspring* by arguing that the unjust enrichment claim should be dismissed because there was "an explicit contract" between AEC, Dr. Robinson, and the government. *See Villaspring*, 2011 WL 6337455, at *8. This Court expressly held in *Villaspring* that such an argument was "misplaced" because agreements concerning Medicare create statutory rather than contractual rights. *Id*. (internal quotations omitted). For the same reason, the Court will not dismiss the unjust enrichment claim here. As in *Villaspring*, the Complaint in this case "has alleged numerous facts that, if true, make this assertion plausible." *Id*. If AEC and Dr. Robinson did in fact make claims to Medicare or Medicaid for worthless, upcoded, or unnecessary services, and were reimbursed for those services, as the United States alleges, then the Defendants here were unjustly enriched. At this stage in litigation, the plaintiff need only allege sufficient facts to support such a claim which, as discussed above, the United States has done in this case. *See Iqbal*, 556 U.S. at 678; *see also Villaspring*, 2011 WL 6337455, at *8 (denying motion to dismiss unjust enrichment claim in the

context of the FCA when complaint alleged facts that, if true, would plausibly support the defendants having been unjustly enriched at the government's expense). Rule 9(b) is not designed to force a plaintiff to prove their case in the complaint, but simply to give adequate notice to the defendants and ensure there is some basis for the allegations. *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc*., 1999 WL 33295037, at *6 (W.D. Ky. Aug. 16, 1999).

Additionally, even apart from the nature of Medicare contracts, the Federal Rules permit parties to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Fed. R. Civ. P. 8(a). Therefore, the Court can permit plaintiffs to allege both breach of contract and unjust enrichment as alternative claims. *See, e.g., Tillson v. Lockheed Martin Energy Sys., Inc*., 2004 WL 2403114, at * 26 (W.D. Ky. Sep. 30, 2004) (permitting the government to retain both breach of contract and unjust enrichment claims even in the context of the FCA). The same reasoning applies to the payment by mistake claim, which according to Fed. R. Civ. P. 8(a), the United States is permitted to make in addition to, or as an alternative to the FCA claim, thus requiring even less detail in pleading because of the lack of a *scienter* element. *See United States v. Fadul*, 2013 WL 781614, at *12 (D. Md. Feb. 28, 2013). Accordingly, because the government's claims of unjust enrichment and payment by mistake are premised upon the same allegations of fraud as those underlying the FCA claims, the Court finds that these claims have also been pled with sufficient particularity for purposes of Rule 9(b). *See id*., at *27.

## IV

Defendant AEC has filed a separate motion to dismiss the claims against it. [R. 6.] In that motion, AEC reiterates many of the same claims addressed above, but additionally argues that the FCA does not hold parties responsible for anyone's conduct but their own, and thus AEC's submission of the claims alone is not enough to extend liability to AEC. [R. 6-1 at 2-4.] Specifically, AEC contends that the United States has not sufficiently established the *scienter* element with regard to AEC because it has not articulated how AEC could have known there was anything false about Dr. Robinson's claims. [*Id*. at 2, 4, 5-6.]

### A

According to AEC, the Complaint's allegations focus primarily on Dr. Robinson's actions, but they do not show that AEC endorsed Dr. Robinson's actions or had any role in his provision of services other than by employing him. [R. 6-1 at 3.] In support of AEC's contention that it should not be held liable under the FCA for Dr. Robinson's behavior, AEC cites to the Supreme Court's decision in *United States v. Bornstein*. 423 U.S. 303, 312 (1976). That case, however, does not support AEC's position. Although the Court in *Bornstein* explained that the FCA only penalizes an individual for his own actions, this is precisely what the Complaint in this case does – it seeks to hold AEC accountable for the action that AEC is responsible for – that of submitting the false claims to Medicare and Medicaid. AEC is the entity which allegedly committed the "acts which cause[d] false claims to be presented" to the government. *Bornstein*, 423 U.S. at 312.

As for vicarious liability, "courts have found employers vicariously liable under the FCA for acts of employees when the employees acted within the scope of their employment,"

*Villaspring*, 2011 WL 6337455, at *11 n. 4, and under the standard in some cases, such as *Shackleford*, the government does not necessarily need to allege that AEC endorsed or directed Robinson's behavior for vicarious liability to attach. *See United States ex rel. Shackleford v. American Mgmt., Inc.*, 484 F. Supp. 2d 669, 676 (E.D. Mich. 2007). At this stage of litigation, however, the Court does not need to further address the issue of vicarious liability because the Complaint has alleged enough facts to at least bring such a claim.

## B

AEC further contends that the claims against it should be dismissed because the United States has alleged AEC's liability under a false certification theory, which still requires that a plaintiff plead facts supporting *scienter*, and AEC argues that the United States has failed to do so here. [R. 6-1 at 2-3.] A false certification theory applies when the payment from the government is conditioned on compliance with certain regulations, "meaning that the government would not have paid the claim had it known the provider was not in compliance." *United States ex rel. Hobbs v. MedQuest Assocs., Inc.*, 711 F.3d 707, 714 (6th Cir. 2013). "False certifications may be express or implied." *Id.* An express false certification is when the defendant "signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted. Under an implied certification theory, a facially truthful claim can be construed as false if the claimant "violates its continuing duty to comply with the regulations on which payment is conditioned." *Hobbs*, 711 F.3d at 714 (quoting *Chesbrough*, 655 F.3d at 468)." In other words, when the act of submitting a claim to the government for reimbursement necessarily implies compliance with any applicable federal rules as "a precondition to payment," the person or entity submitting the claim may be liable under the FCA. *Villaspring*, 2011 WL

6337455, at *6 (quoting *Mikes*, 274 F.3d at 699.)

Here, the Complaint alleges AEC submitted Dr. Robinson's claims to Medicare and Medicaid, and that AEC received all reimbursements for those claims. [R. 1, ¶¶ 18-28.] Doctor Robinson assigned his rights to bill Medicare and Medicaid to AEC, and AEC submitted his claims using a CMS-1500 form which requires the treating physician to certify that the services on the form were "medically indicated and necessary." [R. 1, ¶¶ 23-26.] AEC also submitted claims to Medicare using an enrollment form in which AEC agreed that it would only submit "accurate, complete, and truthful" claims for which the services were performed as billed; and AEC submitted claims to Medicaid after signing a MAP-380 form which certifies that each claim is "true, accurate, and complete." [R. 1, ¶ 27-28.] AEC does not deny that these alleged facts are true. Indeed, AEC specifically concedes that it submitted the claims for Dr. Robinson's services which are at issue in this case. [R. 12 at 1.] The Sixth Circuit has adopted the view that under an implied certification theory, "liability can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned." *Augustine*, 289 F.3d at 415. Here, the Complaint alleges that AEC is liable based on the fact that AEC was the entity that submitted the claims, and that by doing so, AEC also certified the truth of those claims. The language of the enrollment forms used seems to indicate a continuing duty of compliance, which, if the claims were false, means that AEC may have violated its duty to ensure that it only submitted truthful and accurate claims. Such allegations therefore constitute a valid FCA claim.

Even when the theory of FCA liability "is premised on implied certification of compliance with a contract, the FCA nonetheless requires that the contractor knew, or recklessly disregarded a risk" that the submitted claims were false. *Augustine*, 239 F.3d at 416. Thus, AEC

is correct that the *scienter* element still applies, but at the pleading stage, Rule 9(b) does not require the plaintiff to plead that element with particularity. Fed. R. Civ. P. 9(b). At this stage, it is enough that the United States has alleged sufficient facts to establish that it was at least plausible that AEC should have known, or recklessly disregarded, the possibility that Dr. Robinson's claims were not truthful. Because of the contracts that AEC signed with Medicare and Medicaid, AEC had a clear, ongoing duty to ensure that all submitted claims were accurate. The Complaint alleges that AEC knew or should have known that the claims were false, primarily by explaining the mathematical impossibility that Dr. Robinson could have spent sufficient time with his patients on at least his highest-volume days, if not on other days as well. These allegations, if true, would support the assumption that AEC may have recklessly "disregarded a risk" that Dr. Robinson's claims might not have been entirely accurate.

AEC does not dispute the fact that AEC employed Dr. Robinson, the fact that AEC contracted with the nursing homes for Robinson's services, or the fact that AEC submitted the claims for Robinson's services to Medicare and Medicaid. [R. 6-1 at 1-5; R. 12 at 1.] Thus, contrary to AEC's assertions, the government in this case has sufficiently described the role that both AEC and Dr. Robinson played in submitting the claims. The Complaint does not simply include "blanket references" to acts of both Defendants, but makes clear that AEC's liability is premised on the fact that it submitted the claims at issue to Medicare/Medicaid and that the act of submitting the claims was a certification of the truth of such claims. *Tillson*, 2003 WL 2403114, at *25. This provides sufficient notice to AEC concerning the "who" and "what" of the alleged violations in order to enable AEC to respond. *Id.* "The fraudulent intent can be inferred from the circumstances" described above, and the resulting injury is the reimbursement from Medicare

and Medicaid that went into AEC's bank account.  *Bledsoe*, 501 F.3d at 493.  Thus, the government has sufficiently delineated the elements of a FCA claim against AEC.  The facts that would establish exactly what AEC did or did not know would be available through discovery and are unnecessary to include in the complaint, so long as the complaint alleges enough facts to make it plausible that AEC might have had knowledge that the claims were fraudulent.  The Court reiterates that although this is not the proper time to determine whether these allegations prove AEC's liability, the Complaint's allegations are at least sufficient to survive a motion to dismiss and allow the parties to proceed to discovery on these issues.

## IV

As explained above, a plaintiff need not completely prove its allegations in the complaint, even for fraud claims, but must at least provide enough detail as to times, dates, and specific claims to enable the defendant to file a responsive pleading.  *Bledsoe*, 501 F.3d at 509.  Moreover, the particularity requirements of Rule 9(b) do not extend to the defendant's intent.  Fed. R. Civ. P. 9(b).  Therefore, for the reasons discussed above, the Court finds that the details of the specific claims provided in the Complaint are sufficient to notify both Dr. Robinson and AEC of the allegations against them.

The Court further notes that the parties have filed several exhibits of various audits, investigation reports, employment agreements, and other various reports in an attempt to prove whether or not AEC knew the claims at issue could be false.  The Court, however, refuses to decide the merits of this case at this early stage of litigation.  The parties are reminded that such filings are unnecessary in the context of motions to dismiss, and that it would be inappropriate for the Court to rely on them when ruling on a 12(b)(6) motion.  As explained above, the

Complaint meets the threshold pleading requirements sufficient to allow the case to survive a Rule 12(b)(6) motion, but the specific proof of the Complaint's allegations should be decided at later stages in the litigation process.  For these reasons, it is hereby **ORDERED** as follows:

1.      The Defendants' Joint Motion to Dismiss for Failure to State a Claim [**R. 4**] is **DENED**; and

2.      Defendant AEC's Motion to Dismiss [**R. 6**] is **DENIED**.

This 4th day of February, 2014.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**